𝕴𝖓 𝖙𝖍𝖊 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘<br>𝕱𝖔𝖗 𝕿𝖍𝖊 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙 𝖔𝖋 𝕾𝖔𝖚𝖙𝖍 𝕮𝖆𝖗𝖔𝖑𝖎𝖓𝖆

**BEAUFORT DIVISION**

| | |
|---|---|
| Eugene Harrison, # 157985,<br>a/k/a Eugene Paul Harrison,<br><br>    Plaintiff,<br><br>  vs.<br><br>Doctor Thomas Moteka/Motycka;<br>Director Leon Joyner of Physicians<br>Health Services; Aramark's Food Service<br>Director and Employees; Dieticians;<br>Mr. Bob Ceeffers, Supervisor;<br>Jarvis, Alvin S. Glenn Detention Center<br>Officer; Lieutenant Burrough;<br>Officer Dukes; Officer Hydrick;<br>Officer Chance, Nikki, Physicians Health<br>Services Nurse, NKN; and Nurse Sherry,<br>NKN; all Defendants sued in their<br>Individual and Official Capacities,<br><br>    Defendants. | Civil Action No. 9:06-1203-PMD-GCK<br><br><br>**REPORT AND RECOMMENDATION<br>OF THE MAGISTRATE JUDGE** |

## I.  INTRODUCTION

The Plaintiff, Eugene Harrison ("Plaintiff" or "Harrison"), was a pre-trial detainee housed in the Alvin S. Glenn Detention Center ("ASGDC") at the time of the alleged incidents giving rise to this action.[1]  Proceeding *pro se*, Plaintiff seeks relief pursuant to 42 U.S.C. 1983 from the above-captioned Defendants, whom he sues in their individual and official capacities.

This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of Title 28, United States Code, Sections 636(b)(1)(A) and (B), and Local Civil Rules 73.02(B)(2)(c) and (e), D.S.C.  Pending before this court are the following: (1) the motion for summary judgment filed by defendant

---

[1]  Plaintiff currently is incarcerated in a South Carolina Department of Correction's Facility.

Bob Sefers ("Sefers") (incorrectly identified as Ceeffers) and Aramark Correctional Services, Inc. ("Aramark") [31]; (2) the motion for summary judgment filed by defendants Lt. Burrough, Officer Chance, Officer Dukes, Officer Hydrick, and Officer Jarvis [41]; and (3) the motion for summary judgment filed by defendants Leon Joyner, Thomas Moteka ("Motycka"), Nurse Nikki, Nurse Sherry, and Prison Health Services, Inc., (incorrectly identified as Physician Health Services) [45].  As these are dispositive motions, this Report and Recommendation is entered for review by the District Court.

## II.  *PRO SE* COMPLAINT

Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Haines v. Kerner*, 404 U.S. 519 (1972); *Estelle v. Gamble*, 429 U.S.97 (1976); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F. 2d 1147 (4th Cir. 1978). Under established local procedure in this judicial district, a careful review has been made of the *pro se* complaint herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Publ L. No. 104-132, 110 Stat. 1214.  This review has been conducted in light of the following precedents:  *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* complaints are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam).  Even under this less stringent standard, however, the *pro se* complaint is still subject to summary dismissal.  The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented.  *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999).  Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up

questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). Despite the requirement of liberal construction, the court "cannot ignore a clear failure in the pleading to allege facts supporting a claim cognizable in a federal district court." *Rice v. National Security Council*, 244 F.Supp 2d 594 (D.S.C. 2001), *citing Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir.1990). Such is the case with the present complaint.

### III.  BACKGROUND

According to Plaintiff's medical and jail records, he was an inmate at the ASGDC from December 10 – December 30, 2005 (the "2005 Detention") and again from January 12 – June 13, 2006 (the "2006 Detention"), before he was transferred to a facility operated by the South Carolina Department of Corrections.

### A.  Plaintiff's Claims Against Dr. Motycka, Director Leon Joyner, Nurse Nikki, Nurse Sherry, and Prison Health Services, Inc.

Plaintiff claims in his Complaint that he entered the ASGDC with the pre-existing health conditions of pernicious anemia and high blood pressure.[2] He alleges Dr. Motycka failed to examine him and refused to give him medication during the 2005 Detention. When Plaintiff was arrested and housed a second time in the ASGDC, during the 2006 Detention, he claims he "again saw" Dr. Motycka but that Dr. Motycka "refused to examine" him and refused to prescribe medication to treat his pre-existing health conditions. Subsequently, Dr. Motycka prescribed various medications to treat Plaintiff's blood pressure and then reduced or discontinued those medications. Plaintiff claims Dr. Motycka acted wilfully and indifferently and caused Plaintiff unnecessary infliction of pain.

Plaintiff makes no specific allegations in his Complaint against Director Leon Joyner of Prison Health Services, Inc. ("PHS") or specifically against PHS. With respect to the

---

[2]        *See* Plaintiff's Memorandum in Opposition [52] at p. 6.

named Defendant Director Leon Joyner, it is recommended that he be granted summary judgment.

According to the Complaint, Nurse Nikki and Nurse Sherry took Plaintiff's blood pressure after his many requests for sick call were not answered.

### B.  Plaintiff's Claims Against Officer Jarvis and Lt. Burrough

Next, Plaintiff contends that Officer Jarvis and Lt. Burrough denied him copies of materials from the law library law because he owed $33.00 in unpaid fees.  Plaintiff alleges that these Officers engaged in reprisal because Plaintiff had filed a grievance against those Officers a two days earlier.

### C.  Plaintiff's Claims Against Officer Hydrick, Officer Dukes, and Officer Chance

With respect to Officer Hydrick, Officer Dukes, and Officer Chance, Plaintiff alleges that Officer Hydrick and Officer Dukes served him cold food and told him milk was ordered for his tray when, apparently, milk was not on his tray.  Soon thereafter, Plaintiff complained about the lack of milk to Officer Chance, who allegedly responded with an obscenity and informed Plaintiff that milk had not been ordered for his tray.

### D.  Claims Against Aramark's Food Services Director and Employees, Dieticians, and Bob Sefers, Supervisor

Plaintiff also has named Aramark's Food Services Director and Employees, Dieticians; and Mr. Bob Sefers, Supervisor, in this action because Plaintiff alleges he was served "cold or incomplete" meals in order to starve him into a guilty plea.

### IV.  PROCEDURAL HISTORY

Plaintiff filed this action on April 12, 2006[3] against the Defendants, alleging violations of his rights under the Eighth and Fourteenth Amendments on the grounds that he received inadequate medical care, cold meals, incomplete cardiac diets (lacking milk), inadequate

---

[3]    The Plaintiff has the benefit of the holding of *Houston v. Lack,* 487 U.S. 266, 101 L.Ed.2d 245, 108 S.Ct. 2379 (1988), with respect to the "delivery" date of his Complaint.  *See* Order [9] at p. 1.

portions, and that he was denied access to the ASGDC law library and copies from the law library. He seeks $5 Million in damages, and pre-payment of his health, dental, and life insurance for the remainder of his life.[4] [1] The Defendants answered and thereafter three Motions for Summary Judgment were filed at various times. [31; 41; 45] Following the filing of each Motion for Summary Judgment, the undersigned issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of the dismissal procedure and the possible consequences if he failed to adequately respond to each of the Motions for Summary Judgment in a timely manner. [38; 42; 46] On October 18 and on October 30, 2006, Plaintiff filed responses in opposition to all of the Defendants' Motions for summary judgment. [50; 51; 52; 53]

## V. SUMMARY JUDGMENT STANDARD

The motion for summary judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Rule 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is

---

[4] Plaintiff also sought injunctive relief with respect to use of the law library and the receipt of copies. However, these claims have been rendered moot because he is no longer incarcerated in the ASGDC.

entitled to summary judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue.  *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  When Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

## VI.  DISCUSSION

### A.  Whether Plaintiff Exhausted his Administrative Remedies
### Prior to Filing this Action

As a threshold matter, the court will address whether Plaintiff has exhausted his

available administrative remedies.  *See Anderson v. XYZ Correctional Health Svcs.*, 407 F.3d

674 (4th Cir. 2005).  The Prison Litigation Reform Act ("PLRA") requires that a prisoner

exhaust administrative remedies before filing a Section 1983 action concerning his

confinement.  42 U.S.C.A. §1997e(a) states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or
> any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until
> such administrative remedies as are available are exhausted.

It is well established that the exhaustion requirement is mandatory, *Anderson*, 407

F.3d at 677, and that the requirement "applies to all inmate suits about prison life," whether

they involve general circumstances or particular episodes and whether they allege excessive

force or some other wrong.  *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d

12 (2002); *see also Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819, 1820, 149 L.Ed.2d 958

(2001) ("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete

any prison administrative process capable of addressing the inmate's complaint and providing

some form of relief, even if the process does not make specific provision for monetary

relief.").  Failure to exhaust all levels of administrative review is not "proper exhaustion" and

will bar actions filed by inmates under any federal law, including Section 1983.  *Woodford v.*

*Ngo*, 548 U.S. —, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006).  A plaintiff's failure to

exhaust administrative remedies under 42 U.S.C. § 1997e(a) is an affirmative defense which

the defendants have the burden to plead and prove.  *Anderson*, 407 F.3d at 681.

According to an Affidavit of Kathryn Harrell, Assistant Director of the ASGDC, the

ASGDC has a grievance system in place that allows inmates to file written complaints.  Ms.

Harrell states that a review of Plaintiff's file reveals that he filed numerous grievances during his incarceration at the ASGDC.[5]

The Defendants Bob Sefers ("Sefers") and Aramark admit that Platiniff filed one grievance regarding the food served to him on April 10, 2006.[6]

The Defendants Jarvis, Burroughs, Hydrick, Chance, and Dukes do not appear to address in their memorandum in support of summary judgment whether or not Plaintiff filed grievances regarding the issues alleged against them in the Complaint.

The Defendants Dr. Motycka, Director Leon Joyner, Nurse Nikki, Nurse Sherry, and PHS admit that Plaintiff submitted Inmate Grievances regarding his medical care.[7]  These defendants contend that the grievances were received and responded to by the jail administration or by PHS.  However, these defendants argue that the form clearly states at the bottom "If not satisfied with the Grievance Officer's response, you may appeal to the Assistant Director or his designee.  The Assistant Director or his designee decision is FINAL."  According to these defendants, Plaintiff did not adhere to the available appeal process to address the responses to his grievances other than writing additional grievances.  These defendants argue that Plaintiff failed to exhaust his available administrative remedies and cannot pursue his Section 1983 claim, and his claims must be dismissed.

In response, Plaintiff contends that he did pursue his administrative remedies as to all Defendants.[8]

---

[5]    *See* Harrell Affidavit [41-2] at p. 3, ¶¶ 12, 14.

[6]    *See* Motion for Summary Judgment [31] filed by Sefers and Aramark at p. 2.

[7]    See Medical Inmate Grievances Exhibit C.

[8]    *See* "Plaintiff In Opposition [sic] Notice" [in opposition to Officer Jarvis, Lt. Burroughs, Officer Dukes, Officer Hydrick, and Officer Chance] [50] at p. 8; Plaintiff's Memorandum in Opposition to Defendants' [Dr. Motycka, et. al] Memorandum [52] at pages 18-20; and Plaintiff's Objection to motion for summary judgment filed by ARAMARK and Bob Sefers [53] at p. 3 and attachments thereto.

The court is of the opinion that the Defendants have not carried their burden of proof with respect to whether Plaintiff exhausted his administrative remedies, and therefore will turn to the merits of the case.

## B.  Plaintiff's Action Pursuant to Section 1983

Plaintiff has brought this action alleging violations of his civil rights pursuant to 42 U.S.C. § 1983.  The United States Supreme Court has held:  "To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42 (1988).  Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred."  *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979).  In order to succeed in this action, he must show:  (1) a deprivation; (2) of a right guaranteed him under the Constitution or laws of the United States; (3) by a person; (4) acting under color of state law.  As a *pro se* litigant, Plaintiff's Complaint must be construed liberally by this Court. Nevertheless, a careful review of the pleadings in this case leads this Court to conclude that, for the reasons set forth below, Plaintiff has not raised any genuine issue of material fact, and therefore all of the Defendants are entitled to judgment as a matter of law.

## 1.  Claims Against Bob Sefers and Aramark

Plaintiff's claims made against the Defendant Aramark and its Food Services Director Bob Sefers concern the service of food at the ASGDC during the period of time December 2005 through April 2006.  Specifically, the Plaintiff alleges in his Complaint that food served by ARAMARK at the Detention Center was served cold[9] and that two breakfasts, served on April 6 and 10, 2006, were not balanced and nutritious, and consisted of cold grits, a teaspoon of peanut butter, two slices of bread, milk, and juice.  Furthermore, Plaintiff contends that the

---

[9]        *See* Complaint [1] at ¶ 12.

last meal on Thursday, April 7, 2006 was served at 4:30 p.m. and consisted of two (2) sandwiches and a cup of Kool-Aid; nothing else was served until 7 a.m. the next morning. Plaintiff contends that he is being starved into entering a guilty plea.[10]  There are no specific allegations of any other alleged deficiencies with the food service during the Plaintiff's detention.  Moreover, there are no allegations in the Complaint that the Plaintiff suffered any deterioration of his physical condition as a result of being served cold food or the two allegedly nutritionally deficient breakfasts.

The Fourth Circuit Court of Appeals recognizes the well established principal that "inmates must be provided nutritionally adequate food, 'prepared and served under conditions which do not present an immediate danger to the health and wellbeing of the inmates who consume it.'"  *Shrader v. White*, 761 F.2d 975, 986 (4th Cir. 1985) (citations omitted). Failure to meet an inmate's basic nutritional needs is considered cruel and unusual punishment because the inmate relies on prison officials to provide food.

In the present case, there simply is no evidence that the Plaintiff suffered any adverse physical effects as a result of any alleged deficient food service.  Other than a general allegation that food was served cold, the Plaintiff can identify only two instances (April 6 and 10, 2006) when he alleges that he was served a nutritionally unbalanced breakfast consisting of grits, peanut butter, two slices of bread, milk and apple juice.[11]  Taking the allegations as true, and thus assuming that those breakfasts did not provide balanced nutrition to Plaintiff (which the Defendants Sefers and Aramark deny), there is no evidence that the Plaintiff sustained any "serious or significant physical or emotional injury resulting from" the allegedly deficient food service.  *Strickler v. Waters*, 989 F.2d 1375 (4th Cir. 1993); *Lopez v.*

---

[10]    *See* Complaint [1] at ¶¶ 12; 14.

[11]    *Id.*

*Robinson*, 914 F.2d 486, 490 (4th Cir. 1990); *Shrader v. White*, 761 F.2d 975, 979 (4th Cir. 1985).

It is well-settled that prisoners have a right to adequate food, *see Farmer v. Brennan*, 511 U.S. at 833, but not to food that is tasty or even appetizing. *See Lunsford v. Bennett*, 17 F.3d 1574, 1578 (7th Cir. 1994) (a complaint about "cold, poorly prepared beans" did not state an Eighth Amendment claim); *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) (temporary Nutriloaf diet did not violate the Eighth Amendment) ; *see also Madyun v. Thompson*, 657 F.2d 868, 874-75 (7th Cir. 1981) (allegation that food served to segregated prisoners was cold and not on the menu served to general prison population was insufficient to state an Eighth Amendment violation); *Hoitt v. Vitek*, 497 F.2d 598, 601 (1st Cir. 1974) (prisoners' allegation of deprivation of hot meals failed to state a claim of cruel and unusual punishment, given the stipulation that three meals were provided daily); *Prophete v. Gilless*, 869 F.Supp. 537 (W.D.Tenn. 1994) (food which was cold by the time it was served did not constitute cruel and unusual punishment). Indeed, routine discomfort is part of the penalty prisoners pay for their offenses, and prisoners simply cannot expect the "amenities, conveniences, and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988).

There is no evidence of any deterioration of the Plaintiff's health from the food service. Without more, Aramark and its Food Service Director Bob Sefers are entitled to summary judgment. *See Sweet v. South Carolina Dept. of Corrections*, 529 F.2d 854 (4th Cir. 1975) (The failure to point to specific deficiencies in food or adverse effects on inmate's health warranted dismissal of claim); *Islam v. Montross Inn*, 782 F.Supp. 1111 (E.D.Va. 1992) (Defendant food service vendor's 12(b)(6) motion granted where no allegation of serious medical and emotional deterioration were attributable to allegedly defective food service); *Lunsford v. Reynolds*, 376 F.2d 526 (W.D.Va. 1974) (Without specific factual allegations of ill effects or inadequacy of nutrition, plaintiff's allegations of deficient food

service are too broad and conclusory and are appropriate for dismissal.); *Johnson v. Williams*, 768 F.Supp. 1161 (E.D.Va. 1991)  Conclusory allegations that meals are cold or inadequate in the absence of allegations of malnutrition or unsanitary conditions warrant summary dismissal.); *Gardner v. Beale*, 780 F.Supp. 1073 (E.D.Va. 1991) (Conclusory allegations in Complaint warrant dismissal).

### 2.  Failure to Allege Facts Constituting Deliberate Indifference as to Sefers and Aramark

Even if the challenged food service conditions caused the Plaintiff a constitutionally cognizable harm, there is no evidence that demonstrates "deliberate indifference" as the cause of his harm and, therefore, the Plaintiff's cause of action is subject to summary dismissal. *Lopez v. Robinson*, 914 F.2d 486, 490 (4th Cir. 1990)("negligence or good faith error causing such harm will not establish a constitutional claim."); *Islam v. Montross Inn*, 782 F.Supp. 1111 (E.D.Va. 1992) (Defendant food service vendor's 12(b)(6) motion granted where no allegation of "deliberate indifference" as to allegedly defective food service).  In *Wilson v. Seiter*, 501 U.S. 294 (1991), the United States Supreme Court identified a subjective element to the consideration of whether an alleged deficient condition, such as the food service in this case, qualifies as cruel and unusual punishment.  In *Wilson*, the Supreme Court noted that "the medical care a prisoner receives is just as much a 'condition' of his confinement as the food he is fed" and, therefore, the "deliberate indifference" standard is applicable to prison condition cases. Wilson, 501 U.S. at 303.  It is only such indifference that can violate the Eighth Amendment.  *Wilson*, 501 U.S. at 297.

In the case at hand, the Plaintiff has failed to produce any evidence to demonstrate Aramark's alleged deliberate indifference to basic nutritional needs.  To the contrary, the evidence reveals that Aramark employed a registered dietician who created a four week cycle of meals that met the detainees' nutritional needs, even for those on a special cardiac diet such

as the Plaintiff. There is no evidence that the diet for the Plaintiff was deficient in any manner.

Plaintiff was detained at the ASGDC for approximately five months and was served on the order of 350-450 meals, and contends he was served two allegedly nutritionally unbalanced breakfasts. This allegation fails to rise to the level of "deliberate indifference" necessary to survive summary dismissal. Therefore, the Defendants Aramark and Sefers should be granted summary judgment.[12]

The Affidavit of Robert Sefers demonstrates that Aramark has no duty or responsibility for evaluating detainees' medical or special dietary needs. Instead, it is the policy of the ASGDC that before a detainee is provided a special diet, the detainee must be evaluated by the medical department and a Diet Order issued to the food service provider. In this case, the only Diet Order issued to Aramark was issued on February 15, 2006 for a cardiac diet for Plaintiff. Thereafter, Aramark received only one grievance during the Plaintiff's detention – a complaint concerning the portions of food served to the Plaintiff at breakfast on April 10, 2006. Significantly, neither the Plaintiff's inmate file nor medical file demonstrate any adverse physical effect from this allegedly deficient breakfast, or any other meal served to him during his detention.

As for the Plaintiff's allegations concerning the nutritional value of the meal(s) served to him, the Diet Load sheets attached with Robert Sefers' Affidavit demonstrate a carefully planned diet catering to the specific needs of those detainees on a special diet, including the Plaintiff's cardiac diet. The diets are planned by a registered dietician in accordance with well-recognized national and state nutritional guidelines.

---

[12]     Given this conclusion, the court will decline to address the additional arguments set forth by ARAMARK and Sefers, *to wit,* Plaintiff's failure to allege facts of an impermissible corporate policy, and the issue of whether service was proper in this case. The court does, however, appreciate the thoroughness of the Memorandum of these defendants.

### 3. Alleged Denial of Access to the Courts by Officer Jarvis and Lt. Burrough

The Plaintiff has alleged that his constitutional rights were violated by Officer Jarvis and Lt. Burrough because he was not allowed to use the law library or receive copies.[13]  Even if the Court were to take these allegations as stated to be true, the Plaintiff has failed to establish a constitutional deprivation.

The United States Constitution guarantees prisoners the right of meaningful access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 824, 828 (1977).  In *Lewis v. Casey*, 518 U.S. 343, 349-52 (1996), the Supreme Court held that a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation.  In *Cruz v. Hauck*, 515 F.2d 322 (5th Cir. 1975), the court noted that "access to the courts may be satisfied either by availability of legal materials, by counsel, or by any other appropriate devise of the State." *Id.* at 331.

In order for an inmate to establish a claim for denial of access to the courts, the inmate must show that he has suffered an actual injury resulting from some official act of the institution.  *See Strickler v. Waters*, 989 F.2d 1375 (4th Cir. 1993).  Later, in the case of *Cochran v. Morris*, 73 F.3d 1310 (4th Cir. 1996), the Fourth Circuit, relying in part on the holding in *Strickler*, upheld the district courts dismissal of an inmate's "access to the courts" claim.  The *Cochran* Court held:

> In making such a claim, a prisoner cannot rely on conclusory allegations. Specificity is necessary so that prison officials are not required to file unnecessary responses to speculative allegations.  A prisoner must also identify an actual injury resulting from official conduct.  A showing of injury is required in order to avoid adjudication of trivial claims of deprivation.

*Cochran*, 73 F.3d at 1317, (internal citations omitted). The *Cochran* Court went on to explain: "[the Plaintiff's] complaint is primarily deficient, however, because he failed to assert any actual injury resulting from prison officials' conduct. " *Id*, citing *Strickler*, 989 F.2d at 1384.

---

[13]        *See* Complaint [1] at ¶ 13.

Recently, in *Johnson v. Ozmint*, 2005 WL 3164071 (D.S.C. January 25, 2005), the court explained the "actual injury" requirement in an "access to the courts" claim. "Actual injury must be more than theoretical deficiencies, it is showing that the alleged deficiencies have hindered or are hindering a prisoner's efforts to pursue a legal claim." In the present case, Plaintiff has made no showing that he has been hindered in any manner.

Next, with respect to the Plaintiff's allegations regarding his alleged inability to receive copies at the detention center, this claim also must fail. This Court has held that, "[an inmate] possess no general right to free photocopies or postage in his pursuit of *pro se* civil lawsuits." *Ferola v. S.C. Dep't of Corrections*, 2006 WL 2475396 (D.S.C. 2006). It is the understanding throughout the federal courts that there is no right to free photocopies. *Id.*

Therefore, since the Plaintiff has not shown any actual injury that resulted from his alleged inability to use the law library or receive free photocopies while detained at ASGDC, his claims against the Defendants Officer Jarvis and Lt. Burrough are without merit, and these Defendants should be granted summary judgment.

### 4. Medical Care

Plaintiff alleges that Dr. Motycka and the nursing staff of PHS at ASGDC failed to treat him timely and adequately for his medical complaints. Plaintiff alleges that he was refused medication and was not examined by Dr. Motycka during the December Detention. Plaintiff further alleges that he was refused evaluations and medication by Dr. Motycka during the 2006 Detention for pernicious anemia and high blood pressure and that Dr. Motycka ordered a cell search for extra medications as reprisal for filing grievances. Plaintiff makes additional allegations regarding the nursing staff and Dr. Motycka for incidents after March 31, 2006.[14]

---

[14]    These Defendants contend that as of March 31, 2006, PHS no longer provided medical services to inmates and detainees and, therefore, the defendant nurses and Dr. Motycka were no longer PHS employees.

These Defendants first argue that Plaintiff's complaint should be dismissed for improper and insufficient service pursuant to Rule 12 (b) of the Federal Rules of Civil Procedure. The complaints were sent certified mail by the United States Marshals Service to Defendants Nurse Nikki, Nurse Sherry, and Thomas Motycka at the ASGDC address on June 19, 2006. These individuals were not served personally and there is no evidence of a return receipt. Furthermore, at the time of service Nurse Nikki and Nurse Sherry were no longer employees of PHS and upon information and belief were no longer employed in any capacity at the ASGDC. Dr. Motycka has never received a copy of the summons and complaint at his home or at the ASGDC center and is no longer working there. Furthermore, Defendant Leon Joyner was never served in any capacity because Plaintiff did not provide an address for service. PHS received notice of this claim when it received a copy of the complaints to Nurse Sherry, Nurse Nikki, and Dr. Motycka from an unknown agent or employee of the ASGDC, who mailed them to PHS' corporate headquarters as a courtesy on June 30, 2006.

Pursuant to Rule 4(m) of the FRCP, plaintiff's complaint may be dismissed for failure to serve the summons and complaint on the defendants within 120 days of filing the complaint. The complaint in this case was filed on April 25, 2006 and, therefore, service had to have been made no later than August 23, 2006. There is no evidence that the Defendants Nurse Sherry, Nurse Nikki, or Dr. Motycka, were served with the complaint in this action, only that a copy was mailed to ASGDC after their employer, PHS, no longer had a contract with the facility nor any employees. The United States Marshals Service did not attempt service of Leon Joyner and there is no record that he has been advised of this action in any way. Mr. Joyner is no longer an employee of PHS and would not be eligible for service at PHS' corporate office.

Although the court is of the opinion that service was not achived on these individuals, it nonetheless, out of an abundance of caution, will address the Plaintiff's allegations against them.

**5. Whether Plaintiff received adequate medical care by PHS**

Plaintiff alleges that the defendants Dr. Motycka, Nurse Sherry, Nurse Nikki, PHP, and Joyner were deliberately indifferent to his medical needs. Of course, the government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104.

Medical claims of a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. *See City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239 (1983). However, the inquiry as to whether a pretrial detainee's rights were violated under the Fourteenth Amendment is the same as that for a convicted prisoner under the Eighth Amendment (deliberate indifference to a serious medical need). *See Martin v. Gentile,* 849 F.2d 863, 871 (4th Cir.1988), citing *Estelle,* 429 U.S. 97. "Deliberate indifference is a very high standard. In *Miltier v. Beorn,* the Fourth Circuit Court of Appeals noted that the medical treatment at issue "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Miltier*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle,* 429 U.S. 104; *Farmer v. Brennan,* 511 U.S. 825 (1994); *Sosebee v. Murphy,* 797 F.2d 179 (4th Cir. 1986). Although the Constitution does require that prisoners be provided with a

certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). Furthermore, the type and amount of medical care is discretionary. *See Brown v. Thompson,* 868 F.Supp. 326 (S.D.Ga. 1994). The mere fact that a prisoner may believe he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g ., Russell v. Sheffer,* 528 F.2d 318, 319 (4th Cir. 1975). Finally, it is well established that even medical malpractice does not constitute a violation of an inmate's constitutional rights simply because he happens to be a prisoner or an inmate. *Estelle v. Gamble,* 429 U.S. 97 (1976).

Plaintiff's complaint alleges that during his detention at ASGDC, he did not receive adequate medical treatment from PHS and its employees, who are the defendants Dr. Motycka, Nurse Nikki, and Nurse Sherry. However, the facts indicate that the Plaintiff has failed to state a claim of deliberate medical indifference by these defendants.

With respect to the 2005 Detention, which lasted about twenty-one (21) days, Plaintiff was booked into the ASGDC on December 10, 2005. At the time of his initial intake screening, he stated that he had a history of high blood pressure, anemia, irregular heart rhythm, and liver failure. Plaintiff claims that Dr. Motycka did not examine him and refused to give him medication. However, a nurse did evaluate Plaintiff on December 13, 2005 and a complete history and physical assessment was completed by Dr. Motycka four days later, on December 14, 2005, at which time Dr. Motycka ordered that Plaintiff's medical records from an outside provider be obtained. Dr. Motycka determined that plaintiff was in good health and did not need medications at that time. With respect to the 2005 Detention, the court does not find that Plaintiff has stated a claim of deliberate medical indifference by these defendants.

Plaintiff alleges that during his 2006 Detention, he was refused medication for pernicious anemia and high blood pressure as well as other problems. According to Plaintiff's medical records, Plaintiff was evaluated and treated by Dr. Motycka on January 17,

February 3, February 15, March 8, March 20, April 11, and April 13, 2006.  Furthermore, Dr. Motycka ordered a cardiac diet for the Plaintiff on February 15, 2006 and ordered blood pressure medications on February 15 and 16, 2006.  Significantly, Plaintiff continued to receive blood pressure medications throughout his 2006 Detention.  Dr. Motycka requested Plaintiff's previous medical records, and followed upon Plaintiff's complaint of pernicious anemia on several occasions including December 14, 2005; January 16, 2006; and February 15, 2006.  Dr. Motycka also ordered B-12 injections and other medications for anemia when he received Plaintiff's previous medical records and also ordered a Diagnostic Profile to be completed on May 16, 2006.  Based on the results of that profile regarding plaintiff's anemia, the B-12 injections were then discontinued.  From these facts, it cannot be said that Dr. Motycka demonstrated deliberate indifference to any of Plaintiff's medical needs.

Plaintiff further alleges that he was not given the correct amount of blood pressure medication and that Dr. Motycka ordered a security search of his cell for hidden medication as a reprisal for grievances filed by Plaintiff.  First, there are no orders for a security search from Dr. Motycka.  Second, and more significantly to the court, Plaintiff's medical records show that his medication was given to him "KOP" or "Kept on Person" and that Plaintiff advised a member of the medical staff on March 7, 2006 that "he had taken more medication dosage than ordered 'to keep his blood pressure under control.' "  As a result, Dr. Motycka ordered on March 8 that Plaintiff no longer be given medications KOP.

Plaintiff also states in his complaint that his blood pressure medications were changed and B-12 injections were discontinued.  Pursuant to his professional medical judgment, Dr. Motycka did adjust Plaintiff's hypertension prescriptions based on his blood pressure readings over the course of his detention and discontinued his previous order for B-12 injections based on his clinical evaluations of the Plaintiff.  Although Plaintiff may have disagreed with Dr. Motycka's course of treatment, Plaintiff was provided adequate medical care by PHS and has provided no evidence of damages sustained from any alleged lack of

medical care other than Plaintiff's self-serving statements within the complaint.  As

mentioned above, the constitution does not guarantee to a prisoner the treatment of his choice.

*Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988).  The fact that a prisoner would have

preferred a different treatment or medication than what was prescribed or ordered by a

physician or thought appropriate through the independent professional judgment of the

medical providers is not sufficient to state a Section 1983 constitutional claim.  In this case,

there is no genuine issue as to any material fact and Dr. Motycka, Nurse Nikki, Nurse Sherry

and PHS are entitled to judgment as a matter of law.

The defendant PHS is a private corporation providing medical care to detainees and

prisoners.  PHS is not a person or a state actor under Section 1983 and thus Plaintiff cannot

state a cause of action under Section 1983 against PHS.  Furthermore, Dr Motycka was an

employee of PHS acting as a physician and medical director but also acting pursuant to his

own professional medical judgment.  In *West*, the Court did hold that a physician could be a

state actor added in explication:

> Where the issue is whether a *private* party is engaged in activity that constitutes state
> action, it may be relevant that the challenged activity turned on judgments controlled
> by professional standards, where those standards are not established by the State.
> The Court has held that 'a State normally can be held responsible for a private
> decision only when it has exercised coercive power or has provided such significant
> encouragement, either overt or covert, that the choice must in law be deemed to be
> that of the State. West, 487 at 52. fn.10.

PHS is a private corporation employing nurses who provide care based on their

nursing professional judgment and the nursing standard of care.  Likewise, Dr. Motycka

offered his services using his professional judgment, skill, and training.  The State does not

exercise power over their independent decisions regarding the medical treatment of inmates.

While PHS worked with the detention center to the extent that officers communicated with

PHS employees regarding medical and mental health requests and transfers of inmates,

ASGDC did not control or regulate PHS' employees' professional judgment.  Furthermore,

PHS independently maintains its own policies and procedures and controls the training and supervision of its employees.

Plaintiff has failed to state a claim under §1983 by failing to adequately claim that his constitutional or statutory rights were violated by PHS and failing to prove that PHS and its employees are state actors for purposes of his Section 1983 claim.  Therefore, summary judgment should be granted to the defendants PHS, Dr. Motycka, Nurse Sherry, and Nurse Nikki.

### 6.  Qualified Immunity under Section 1983 as to Defendants Jarvis, Burrough, Dukes, Hydrick, and Chance

In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the United States Supreme Court recognized that immunity for governmental officials exist if their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known to exist.  Qualified immunity acts "by generally providing government officials performing discretionary functions with qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been alleged to have been thought consistent with the rights they are alleged to have violated."  *Anderson v. Creighton* , 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).  The doctrine of qualified immunity serves to balance competing interests between the vindication of civil rights through the mechanism of suits for money damages and the protection of the ability of government officials to act without limitless fear of litigation for official actions.  *Anderson*, *supra*. "[T]he diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office and the danger that the fear of being sued will dampen the ardor of all but the most resolute, or the most irresponsible public officials" is a primary policy consideration upon which the doctrine is based.  *In re Allen*, 119 F.3d 1129, 1131 (4th Cir. 1997), *quoting Harlow v. Fitzgerald*, 457 U.S. at 814, 102 S.Ct. at 2736 (1982) (internal quotations omitted).  "Qualified immunity protects 'all but the plainly incompetent

or those who knowingly violate the law.'" *Anderson*, at 638, 3038 citing *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092. 1096, 89 L.Ed.2d 271 (1986). "[Q]ualified immunity not only insulates an official from liability, but also entitles him to escape trial." *In re Allen*, 119 F.3d 1129 (1997).

As a threshold matter, "[a] court evaluating a claim of qualified immunity 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all … .'" *Jean v. Collins*, 221 F.3d 656, 658 (4th Cir. 2000), quoting *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).  Provided that a deprivation has been sufficiently alleged, the court must next determine whether "an official in similar circumstances [was] granted a common law immunity at the time of passage of § 1983 [and] … whether the purpose and history of § 1983 or *Harlow's* special policy considerations require providing immunity." *In re Allen*, 119 F.3d at 1131. "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action assessed in light of the legal rules that were 'clearly established at the time it was taken.'" *Anderson*, at 639, 3038 quoting *Harlow v. Fitzgerald*, 457 U.S., at 819, 102 S.Ct., at 2739.  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, at 640, 3039.  The right allegedly violated must be a federal constitutional right not a regulation, statute or policy.  *In re Allen, supra.*

In the present case, the record clearly shows that the administrators at the ASGDC have provided for medical care and food service for the inmate population through independent contractors who use qualified and licensed employees.[15]  The Plaintiff's inmate records and medical records show that he has received substantial medical treatment during

---

[15]     *See* Harrell Affidavit.

his incarceration.[16]  Additionally, as is argued above, the alleged actions on the part of these Defendants that the Plaintiff alleges are violations of his rights are not clearly established as constitutional violations.  Being served two cold meals has never been held to be a constitutional deprivation.  Additionally, it is clear from the law in this Circuit that there is no right to free photocopies.  Finally, it is not even clearly established that the Plaintiff, as a detainee at a local detention center, has a right to access to a law library, much less to the unfettered and unlimited access the Plaintiff is apparently claiming he is entitled too.

**7.  Plaintiff's Claims for Injunctive and Declaratory Relief are Moot Because he is no Longer Incarcerated at the ASGDC**

The Fourth Circuit has held that a prisoner transfer moots a request for declaratory and injunctive relief.  *Williams v. Griffin*, 952 F.2d 820 (4th Cir. 1991); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n. 1 (4th Cir. 1986).  "Past exposure to illegal conduct does not itself show present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *Barrett*, *Supra, citing City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.C. 1660 (1983).  As it is undisputed that Plaintiff is no longer housed at the ASGDC, the Plaintiff's claims for injunctive and declaratory relief are moot and should be dismissed.[17]

---

[16]     *See* Exhibits A and B attached to Harrell Affidavit

[17]     See Harrell Affidavit [-2] at ¶ 9.

## RECOMMENDATION

Based upon the foregoing, it is recommended that the Motion for Summary Judgment filed by Aramark and Bob Sefers **[31] should be granted,** the Motion for Summary Judgment filed by Officer Jarvis, Lt. Burrough, Officer Dukes, Officer Hydrick, and Officer Chance **[41] should be granted,** and the Motion for Summary Judgment filed by Leon Joyner, Thomas Motycka, Nurse Nikki, Nurse Sherry, and PHP **[45] should be granted.**

George C. Kosko
UNITED STATES MAGISTRATE JUDGE

December 1, 2006

Charleston, South Carolina

<u>**Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"**</u>
<u>**& The Serious Consequences of a Failure to Do So**</u>

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of its service.  28 U.S.C. § 636 and Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail.  Fed. R. Civ. P. 6.  Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed.  <u>Advance Coating Technology, Inc. v. LEP Chemical, Ltd.</u>, 142 F.R.D. 91, 94 & n. 3, (S.D.N.Y. 1992).  A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge.  *See* <u>Mathews v. Weber</u>, 423 U.S. 261, 270-271 (1976); and <u>Estrada v. Witkowski</u>, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the period for filing objections, <u>but</u> <u>not</u> <u>thereafter</u>, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections.  Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.  *See* <u>Keeler v. Pea</u>, 782 F. Supp. 42, 43-44 (D.S.C. 1992); and <u>Oliverson v. West Valley City</u>, 875 F. Supp. 1465, 1467, (D.Utah 1995).  Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge.  *See* <u>United States v. Schronce</u>, 727 F.2d 91, 94 & n. 4 (4th Cir.) 1984, *cert. denied*, <u>Schronce v. United States</u>, 467 U.S. 1208 (1984); and <u>Wright v. Collins</u>, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985).  Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object.  In other words, a party's failure to object to one issue in a magistrate

judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir. 1985)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402