**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | |
|---|---|
| Eugene Harrison, #36983 (aka Eugene Paul Harrison), )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Doctor Thomas Moketa/Motycka; Director )<br>Leon Joyner of Physicians Health Services; )<br>Aramark's Food Services Director and )<br>employees; Dieticians; Mr. Bob Ceefers, )<br>Supervisor; Alvin S. Detention Officer )<br>Jarvis; Lieutenant Burrough; Officer Dukes; )<br>Officer Hydrick; Officer Chance; Ms. Baker )<br>(accounting); Physician Health Services )<br>Nurse Nikki NKN; Nurse Sherry NKN, )<br>ALL Defendants sued in their Individual )<br>and Official Capacities, )<br>)<br>Defendants. )<br>_____ ) | C.A. No.: 9:06-1203-PMD-GCK<br><br>**ORDER** |

Proceeding *pro se*, Plaintiff Eugene Harrison ("Plaintiff") seeks relief pursuant to 42 U.S.C. § 1983 from the above-captioned Defendants for alleged violations of his constitutional rights. Defendants have filed motions for summary judgment in this matter, to which Plaintiff responded. The record contains the report and recommendation of a United States Magistrate Judge ("the R&R"), made in accordance with 28 U.S.C. § 636 (b)(1)(B), which recommends that Defendants' motions for summary judgment be granted. A party may object, in writing, to a report and recommendation within ten days after being served with a copy of that report. 28 U.S.C. 636 (b)(1). Plaintiff filed timely objections to the R&R.

1

## I. <u>BACKGROUND</u>

Plaintiff was a pre-trial detainee housed at the Alvin S. Glenn Detention Center ("ASGDC") from December 10 - December 30, 2005 (the "2005 Detention") and again from January 12 - June 13, 2006 (the "2006 Detention").[1] During these detentions, Plaintiff alleges the following deprivations of his civil liberties: (1) Dr. Motycka, Director Leon Joyner, Nurse Nikki, Nurse Sherry, and Prison Health Services, Inc. (the "PHS Defendants") were deliberately indifferent to Plaintiff's serious pre-existing health conditions; (2) Officer Jarvis and Lt. Burrough denied Plaintiff access to the law library of the ASGDC and refused to provide him with photocopies of legal materials; (3) Officer Hydrick, Officer Dukes, and Officer Chance subjected Plaintiff to cruel and unusual punishment; (4) Aramark's Food Services director and employees, dieticians, and Bob Sefers, a supervisor, served "cold or incomplete" meals in order to starve Plaintiff into entering a guilty plea, in violation of his rights under the Fourteenth Amendment.

Plaintiff filed this § 1983 action on April 12, 2006 against the Defendants seeking $5 million in damages, and pre-payment of his health, dental, and life insurance for the remainder of his life, as well as injunctive relief with respect to the use of the law library and the receipt of photocopies. Defendants answered and thereafter motions for summary judgment were filed by Defendants Bob Sefers and Aramark [31], by Defendants Lt. Burrough, Officer Chance, Officer Dukes, Officer Hydrick, and Officer Jarvis [41], and by Defendants Leon Joyner, Thomas Moteka, Nurse Nikki, Nurse Sherry, and Prison Health Services, Inc. (the "PHS Defendants") [45]. Plaintiff filed responses in opposition to all of Defendants' motions for summary judgment [50, 51, 52, 53]. After considering these motions and Plaintiff's responses, the Magistrate Judge found that Plaintiff failed

---

[1] Plaintiff is currently incarcerated in a South Carolina Department of Corrections facility.

to present evidence supporting essential elements of his claims. Further, the Magistrate Judge found that Defendants Jarvis, Burrough, Dukes, Hydrick, and Chance were entitled to qualified immunity from suit. Accordingly, the Magistrate Judge recommended that Defendants' motions for summary judgment be granted.

## II. STANDARD OF REVIEW

### A. Magistrate Judge's R&R

The Magistrate Judge makes only a recommendation to the court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 269 (1976). This court is charged with conducting a *de novo* review of any portion of the R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636(b)(1). Any written objection must specifically identify the portions of the report and recommendation to which objections are made and the basis for those objections. *Id.* After a review of the entire record, the R&R, and Plaintiff's objections, the court finds that the Magistrate Judge summarized the facts and applied the correct principles of law. Accordingly, the R&R is adopted in full and specifically incorporated into this Order.

### B. Legal Standard for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record

taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

### III.  OBJECTIONS

#### A.  Bob Sefers and Aramark's Motion for Summary Judgment

Plaintiff asserted a claim against Bob Sefers and Aramark, alleging that the food served at the ASGDC was inadequate and that these Defendants were deliberately indifferent to the serious health risks posed by the food. Specifically, Plaintiff claimed that the food served by Aramark at the Detention Center was often served cold and that, on two occasions, he was served nutritionally deficient breakfasts. Furthermore, Plaintiff claimed that on at least one occasion, he was served a cold and nutritionally deficient dinner. Plaintiff believes that he was being starved into entering a guilty plea, and that the conditions of his confinement constituted cruel and unusual punishment in violation of his Fourteenth and Eighth Amendment rights.

As the Magistrate Judge correctly noted, claims related to conditions of confinement for

pretrial detainees are analyzed pursuant to the Fourteenth Amendment utilizing the same analysis for claims brought pursuant to the Eighth Amendment. He explained that in order to establish cruel and unusual punishment under the Eighth Amendment, an inmate must establish that "the deprivation of [a] basic human need was objectively 'sufficiently serious,'" and that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.' " *Strickler v. Waters,* 989 F.2d 1375, 1379 (4th Cir. 1993) (citations omitted). The United States Supreme Court has determined that only extreme deprivations are sufficient to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. *Hudson v. McMillian,* 503 U.S. 1 (1992). In order to demonstrate such an extreme deprivation, a prisoner must allege "a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler,* 989 F.2d at 1381. In the alternative, the inmate must show a substantial risk of such serious harm resulting from his exposure to the challenged conditions. *See De'Lonta v. Angelone,* 2003 WL 21213672 (4th Cir. 2003) (citations omitted).

In this case, the Magistrate Judge found that Plaintiff failed to present evidence that he had suffered any deterioration of his physical condition as a result of being served cold food and two allegedly nutritionally deficient breakfasts. [R&R at 11.] Without evidence that Plaintiff suffered any adverse physical effects, the Magistrate Judge found that Aramark and its Food Service Director Bob Sefers were entitled to summary judgment, even assuming Plaintiff's allegations are true. [R&R at 11-12.] The Magistrate Judge further found that even if the challenged food service had caused Plaintiff a constitutionally cognizable harm, there was no evidence that demonstrated that Aramark or Bob Sefers' deliberate indifference was the cause of that harm. [R&R at 12-13.] Accordingly, the Magistrate Judge recommended that Aramark and Bob Sefers' Motion for

5

Summary Judgment be granted.

Plaintiff objects to this recommendation. He asserts that his medical records, which are attached as an exhibit to his Response in Opposition to Defendants' Motion for Summary Judgment [50], contain evidence of his "serious or significant physical or emotional injury resulting from the alleged deficient food." [Objections at 10.] He claims that the Magistrate Judge erred in failing to review this evidence. Further, Plaintiff asserts that prison officials had actual notice through his numerous filed grievances that his meals were being served cold. As such, they were disregarding the "excessive risk" to Plaintiff's health by feeding "cold meals knowing once food is prepared it must be kept at a certain minimum temperature ot [sic] prevent growth of harmful bacteria." [Objections at 11.] For these reasons, Plaintiff asserts the Magistrate Judge erred in finding that he had not presented a genuine issue of material fact on this claim.

Plaintiff correctly asserts that he is entitled to receive "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *Ramos v. Lamm,* 639 F.2d 559, 571 (10th Cir. 1980), *cert. denied,* 450 U.S. 1041 (1981); *see also Jones v. Diamond,* 636 F.2d 1364, 1378 (5th Cir. 1981) (food must be reasonably nutritious), *overruled in part on other grounds, Int'l Woodworkers of America, AFL-CIO v. Champion Int'l Corp.,* 790 F.2d 1174 (5th Cir. 1986) *(en banc); Cunningham v. Jones,* 567 F.2d 653, 657-60 (6th Cir. 1977) (same). However, merely serving food cold does not present a serious risk of harm or an immediate danger to the health of an inmate. Plaintiff fails to establish that the potential harm of which he complains - the growth of bacteria on cold food - is inevitable, or even possible. Accordingly, the Magistrate Judge did not err in finding that Plaintiff did not demonstrate that Defendants knew of and disregarded "an excessive risk to inmate health

and safety." *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970 (1994). Further, the court has reviewed Plaintiff's extensive medical records from the ASGDC and finds nothing contained therein that suggests that Plaintiff suffered any adverse effects from the allegedly insufficient diet. While the records show that Plaintiff had significant pre-existing health problems, there is no indication - and Plaintiff cites to nothing in the medical records that does indicate - that these conditions were caused or exacerbated by the diet provided by the ASGDC. Accordingly, the Magistrate Judge did not err in finding that Plaintiff failed to present evidence that he suffered any deterioration of his physical condition as a result of the allegedly nutritionally deficient diet. For these reasons, the court finds that the Magistrate Judge correctly recommended that Aramark and Bob Sefers' motion for summary judgment be granted.

      **B.**     **Defendants Officer Jarvis, Lt. Burrough, Officer Dukes, Officer Hydrick, and Officer Chance's Motion for Summary Judgment**

Plaintiff claimed that during his detention, Officer Jarvis and Lt. Burrough denied him photocopies of materials from the law library because he owed $33.00 in unpaid fees. Plaintiff asserted that these Officers were engaging in reprisal because Plaintiff had filed a grievance against these Officers two days earlier. Plaintiff claims that the conduct of these officers denied him meaningful access to the courts in violation of his Fourteenth Amendment rights. Plaintiff also alleged that, on one occasion, Officer Hydrick and Officer Dukes served him cold food and told him milk was ordered for his tray when, apparently, milk was not on his tray. When Plaintiff complained about the lack of milk, Officer Chance allegedly responded with an obscenity and informed Plaintiff that milk had not been ordered for his tray. Plaintiff asserts that this conduct constituted cruel and unusual punishment in violation of his Fourteenth and Eight Amendment rights.

The Magistrate Judge found that Plaintiff's claims against the Officers for (1) denial of access to the courts and (2) cruel and unusual punishment were both insufficient as a matter of law.

**(1)    Denial of Access to Courts**

As the Magistrate Judge correctly explained, in order for an inmate to establish a claim for denial of access to the courts, the inmate must show that he has suffered an actual injury resulting from some official act of the institution. [R&R at 14.]  Applying this rule to the facts of this case, the Magistrate Judge found that Plaintiff failed to allege or show any actual injury resulting from his alleged inability to use the law library or receive free photocopies while detained at ASGDC. The Magistrate Judge also found that an inmate has no constitutional right to receive free photocopies while incarcerated.  Therefore, the Magistrate Judge recommended that Defendants Officer Jarvis and Lt. Burrough's motion for summary judgment be granted.

Plaintiff objects to this recommendation; he asserts that his "actual injury is obvious." [Objections at 12.]  He asserts that while awaiting trial, he was not allowed "meaningful access ot [sic] the Law Library hindering plaintiff from discovering his state legal defense, prejudicing his defense.  Plaintiff now suffers the consequences of an [sic] conviction he was not allowed ot [sic] attack properly, especially where no evidence supported conviction as indicted." [Objections at 12.] Accordingly, because he asserts that he was wrongfully convicted, he claims that the Magistrate Judge erred in finding that he was not injured by the alleged denial of access to the law library and to photocopies during his pre-trial detention.

The court rejects this objection.  Plaintiff does not identify a specific defense or legal claim that he was unable to pursue due to his alleged lack of access to legal materials; rather, Plaintiff attempts to assert that his present "wrongful" conviction is proof of his actual injury.  Such an

assertion is barred under the holding in *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a state prisoner's claim for damages is not cognizable under § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," unless the conviction or sentence has previously been invalidated. 512 U.S. at 487. In this case, Plaintiff's conviction has not been invalidated; accordingly, this court may not find that Plaintiff has been injured by a "wrongful" conviction. To so find would imply the invalidity of Plaintiff's conviction and would thus violate the holding of *Heck*. Therefore, Plaintiff has not identified an actual injury from his alleged lack of access to ASGDC's law library, and the Magistrate Judge did not err in recommending that this claim be dismissed.

Plaintiff also objects that the Magistrate Judge erred in finding that he was not entitled to receive free photocopies. Plaintiff asserts that because he is indigent, the Constitution requires that he be provided with free photocopies while detained. [Objections at 12.] The court also rejects this objection. To begin with, it is well established that inmates do *not* have unlimited rights to photocopies or photocopying machines. *Lyons v. Clark,* 694 F. Supp. 184, 188 (E.D. Va. 1988) (while prisoners who can show they are indigent have a right to free postage stamps in connection with the right to access the courts, there exists no such right to free photocopies); *see Gibson v. McEvers,* 631 F.2d 95 (7th Cir. 1980); *Harrell v. Keohane,* 621 F.2d 1059 (10th Cir. 1980). Moreover, Plaintiff failed to show how the lack of free photocopying has denied him access to the courts. As such, the Magistrate Judge correctly recommended that summary judgment be granted regarding the claims against Officer Jarvis and Lt. Burrough.

### (2)     Cruel and Unusual Punishment

As noted above, in order to establish cruel and unusual punishment under the Eighth

Amendment, an inmate must establish that "the deprivation of [a] basic human need was objectively 'sufficiently serious,'" and that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.'" *Strickler,* 989 F.2d at 1379 (citations omitted). Only extreme deprivations are sufficient to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. *Hudson,* 503 U.S. at 1. In this case, the Magistrate Judge found that the conduct alleged - serving a cold meal and failing to serve milk on one occasion - did not state a constitutional deprivation. [R&R at 23.] Accordingly, the Magistrate Judge recommended that Plaintiff's Eighth Amendment claim against Officers Hydricks, Dukes, and Chance was deficient as a matter of law.

Plaintiff objects that the Magistrate Judge "purposely misrepresented the facts of every Defendant by failing ot [sic] list the constitutional villation [sic] on every fact." [Objections at 4.] Plaintiff then reiterates his claim that the serving of a cold meal without milk constituted an Eighth Amendment violation. This is not a valid objection to this portion of the R&R. Accordingly, the court adopts the recommendation of the Magistrate Judge regarding this claim without further discussion.

**C.     Mr. Joyner, Dr. Motycka, Nurse Nikki, Nurse Sherry, and PHS's Motion for Summary Judgment**

Plaintiff entered ASGDC with the pre-existing health conditions of pernicious anemia and high blood pressure. He alleged that Dr. Motycka failed to examine him and refused to give him medication during the 2005 Detention. When Plaintiff was arrested and again housed at ASGDC in 2006, he claimed that he "again saw" Dr. Motycka who "refused to examine" him and refused to prescribe medication to treat his pre-existing health conditions. After Nurse Nikki noticed that Plaintiff's blood pressure was high, Dr. Motycka prescribed various medication to treat Plaintiff's

high blood pressure, but subsequently reduced or discontinued those medications. Plaintiff asserts that Dr. Motycka and other employees of PHS acted willfully and indifferently and caused Plaintiff unnecessary infliction of pain in violation of his Fourteenth and Eighth Amendment rights.

The Magistrate Judge recommended that the PHS Defendants' were entitled to judgment as a matter of law. He found that Plaintiff presented no evidence that Dr. Motycka and the nursing staff of PHS were served with the complaint in this action, only that a copy was mailed to ASGDC after their employer, PHS, no longer had a contract with the facility. There was also no evidence that Leon Joyner, the former director of PHS, was served with a complaint or advised of this action in any way. Accordingly, the Magistrate Judge found that, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, Plaintiff's complaint may be dismissed for failure to serve the summons and complaint on these Defendants within 120 days of filing the complaint.

The Magistrate Judge further found that, even if these Defendants had been properly served, Plaintiff presented no evidence (1) that the medical care he received was "so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness" or (2) that he was harmed by the alleged lack of medical care. The Magistrate Judge explained that the fact that a prisoner would have preferred a different treatment or medication than what was prescribed by a physician or thought appropriate through the independent professional judgment of the medical providers is not sufficient to state a § 1983 constitutional claim. [R&R at 20.]

Finally, the Magistrate Judge noted that Defendant PHS is a private corporation and is not a "person" or state actor as meant under § 1983, and thus Plaintiff cannot state a cause of action under § 1983 against PHS. [R&R at 20.] Further, Dr. Motckya and the nursing staff defendants were hired by PHS and offered their services using their professional judgment, skill and training.

11

The State did not exercise power over the PHS employees' independent decisions regarding the medical treatment of inmates, and PHS independently maintained its own policies and procedures and controls the training and supervision of its employees. Accordingly, the Magistrate Judge found that Plaintiff failed to prove that PHS and its employees were state actors for purposes of the § 1983 claim.

For these reasons, the Magistrate Judge found there was no genuine issue of material fact and that Dr. Motycka, Nurse Nikki, Nurse Sherry, Leon Joyner and PHS were entitled to judgment as a matter of law.

Plaintiff objects that the Magistrate Judge erred in finding that he failed to present evidence that the PHS Defendants were deliberately indifferent to his serious medical needs.[2] Plaintiff asserts that, through his medical records, Dr. Motycka had actual knowledge of his pre-existing medical conditions of high blood pressure and pernicious anemia. He further asserts that his medical records support his claim that Dr. Motycka and the nursing staff of PHS at ASGDC failed to treat him timely and adequately for these known pre-existing medical conditions. [Objections at 15 - 16.]

The court finds Plaintiff's objection is without merit. The court has reviewed Plaintiff's extensive medical records and notes that during the six months Plaintiff was detained at the ASGDC, Plaintiff was evaluated and treated by Dr. Motycka on seven different occasions.[3] Dr. Motycka

---

[2] Plaintiff objects that the Magistrate Judge erred in all of his findings; however, because summary judgment should be granted if *any* of the findings of the Magistrate Judge are correct, the court addresses only whether the Magistrate Judge erred in finding that Plaintiff presented no evidence that the medical care he received was "so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." [R&R at 20.]

[3] The record indicates that Dr. Motycka saw Plaintiff on January 17, February 3, February 15, March 8, March 20, April 11, and on April 13, 2006.

ordered a cardiac diet for Plaintiff on February 15, 2006 and ordered blood pressure medications on February 15 and 16, 2006. Dr. Motycka requested Plaintiff's previous medical records to investigate Plaintiff's complaints of pernicious anemia on several occasions, including December 14, 2005, January 16, 2006, and February 15, 2006. Dr. Motycka ordered B-12 injections and other medications for anemia when he received Plaintiff's previous medical records. Also, on May 16, 2006, he ordered a diagnostic profile regarding Plaintiff's anemia to be completed. After reviewing the results of that profile, Dr. Motycka decided to discontinue the B-12 injections.[4] Considering the number of doctor visits and the well-documented account of medical care Plaintiff received, the Magistrate Judge correctly found that Dr. Motycka and the PHS employees did not demonstrate a deliberate indifference to any of Plaintiff's medical needs. The court further finds that Plaintiff makes no cognizable claim against PHS, Nurse Nikki, Nurse Sherry, or Leon Joyner. Accordingly, the Magistrate Judge correctly recommended that the PHS Defendants' motion for summary judgment be granted.

### D.     Plaintiff's Claim for Injunctive and Declaratory Relief

In addition to monetary damages, Plaintiff sought injunctive and declaratory relief against the ASGDC with respect to the use of the law library and the receipt of photocopies. The Magistrate

---

[4] Plaintiff asserts that the discontinuation of his B-12 injections, after his diagnostic profile indicated that his "T3 Uptake" was low, proves that Dr. Motycka was deliberately indifferent to Plaintiff's needs.

T3 is one of two iodine-containing hormones produced by the thyroid gland. See http://www.webmd.com/hw/womens_conditions/hw27377.asp, "Thyroid Hormone Tests" from A-Z Health Guide from WebMD. A low "T3 Uptake" level may indicate thyroid dysfunction or pituitary gland disease; it does not indicate anemia. *Id.* As such, the fact that a patient has a low "T3 Uptake" level would not affect a physician's decision regarding treatment of that patient's anemia. Accordingly, the court finds that the fact that Plaintiff's "T3 Uptake" levels were low does not indicate that Dr. Motycka was deliberately indifferent to Plaintiff's medical needs in discontinuing Plaintiff's B-12 injections.

Judge found that these requests for relief were moot because Plaintiff is no longer incarcerated at ASGDC. [R&R at 23.]

In response to this recommendation, Plaintiff objects that "voluntary cessation of a challenged practice does not deprive a Federal Court of it [sic] power" to issue injunctive relief. Plaintiff contends that there is a reasonable expectation the "alleged violation will recur" and that therefore the Magistrate Judge erred in finding that the requests for injunctive relief were moot. [Objections at 18-19.]

The court rejects this objection. As the record clearly shows, Defendants did not "voluntarily cease" any practice of which Plaintiff complains; rather, Plaintiff was transferred to another facility. Accordingly, the exception to the mootness doctrine where a defendant has "voluntary ceased" his challenged conduct is not applicable in this case. Further, as discussed above, Plaintiff has failed to present any evidence in support of his claim that the denial of access to photocopies of legal material constituted a constitutional violation. As it is undisputed that Plaintiff is no longer housed at the ASGDC, and because Plaintiff presented no evidence of a constitutional deprivation, the Magistrate Judge correctly found that Plaintiff's claims for injunctive and declaratory relief should be dismissed.

## IV.  CONCLUSION

For the foregoing reasons the court adopts in full the recommendation of the Magistrate Judge and **ORDERS** that Defendants' Motions for Summary Judgment are **GRANTED**.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**February 15, 2007.**

### NOTICE OF RIGHT TO APPEAL
Petitioner is hereby notified that he has the right to appeal this order within (30) days from the date hereof, pursuant to Fed. R. App. P. 3-4.

15